## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                            )
LIPMAN HEARNE, INC,                         )
                                            )
                    Plaintiff,              )
                                            )
             v.                             )          Case No.: 13-cv-1413
                                            )
HANDSON GREATER DC CARES,                   )
                                            )
                    Defendant.              )
_____)

## COMPLAINT

Plaintiff, Lipman Hearne, Inc. ("Lipman" or "Sublandlord") for its complaint against

defendant HandsOn Greater DC Cares ("HandsOn" or "Subtenant") states as follows:

## STATEMENT OF THE CASE

1.      Lipman subleased to HandsOn office space on the eighth floor of the

building having a street address commonly known as 1156 Fifteenth Street, NW,

Washington, DC.  The subleased premises consisted of an office suite of 3,440 square

feet leased under the original Sublease (defined below) from December 1, 2008 to

March 13, 2013 and an additional set of adjacent offices leased through the second

amendment to the original Sublease from November 1, 2010 to March 13, 2013 (the

"Premises").  Under the Sublease, HandsOn promised to pay certain rent to Lipman and

did so pay rent for several years, until approximately July, 2011.  HandsOn failed to pay

rent due for the month of August 2011 and, to the extent it has made minimal payments

after that time, they were not timely.  On or about May 31, 2012, HandsOn vacated the

Premises.  All rent due for the remaining nineteen months of the Sublease, plus the fees and interest due under the Sublease, remain due and owing to Lipman.

2.      As further described below, HandsOn has failed and refused to pay Lipman the rent due under the Sublease, as amended to include the additional leased premises, in the amount of $303,731.78, plus administrative fees and 15% interest due under the terms of Sublease HandsOn executed.  Calculated as of August 31, 2013, the unpaid amount of rent, administrative fees and interest is $376,127.51.

3.      Lipman attempted to resolve HandsOn's breach of the Sublease with a Lease Termination Agreement (defined below).  After negotiating the terms of the Lease Termination Agreement, HandsOn failed and refused to sign it.  HandsOn made one payment in the amount of the installments due under the Lease Termination Agreement, but failed and refused to make the remaining installment payments that would be required under its terms.  Accordingly, Lipman has brought this lawsuit seeking, as more fully set forth below, a declaration that HandsOn has breached the Sublease and owes Lipman the rent due under the Sublease, and a judgment for the full amount of the rent due and owing under the Sublease.

4.      Alternatively, Lipman seeks, as more fully set forth below, a declaration that HandsOn has breached the Lease Termination Agreement and owes Lipman the payments due under the Lease Termination Agreement, and a judgment for the full amount of the payments due and owing under the Lease Termination Agreement.

2

## PARTIES

5.      Lipman is an Illinois corporation that subleased the Premises at issue within the District of Columbia.

6.      HandsOn, formerly known as Greater DC Cares, is a tax exempt organization organized under the laws of the District of Columbia that subleased the Premises at issue from Lipman.

7.      The Premises are located at 1156 Fifteenth Street, NW, within the District of Columbia and the Sublease provides that the Sublease "shall be interpreted and enforced in accordance with the laws of the District of Columbia."

## JURISDICTION

8.      The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

10.      Under a lease dated December 7, 2007, Lipman leases from 1156 Fifteenth Street, L.L.C. office space on the eighth floor of the building having a street address commonly known as 1156 Fifteenth Street, NW, Washington, DC (the "Primary Lease").  The office space Lipman lease under the Primary Lease includes the Premises.  The Primary Lease has been in full force and effect at all relevant times through the present and Lipman remains obligated under the Primary Lease.

3

11.     By Sublease dated and executed on or about November 14, 2008, Lipman subleased the Premises to HandsOn for a term commencing on December 1, 2008 and running through March 31, 2013 (the "Sublease").

12.     The Premises subleased by HandsOn under the Sublease initially consisted of approximately 3,440 square feet of rentable area located in a suite on the eighth floor of the building having a street address commonly known as 1156 Fifteenth Street, NW, Washington, DC.  HandsOn agreed and promised to pay rent for this space as follows:

| Sublease Year | Monthly Base Rental | Annual Base Rental | Base Rental Per Square Ft. |
|---|---|---|---|
| 1st | $10,033.33 | $120,400.00 | $35.00 |
| 2nd | $10,285.60 | $123,427.20 | $35.88 |
| 3rd | $10,540.73 | $126,488.80 | $36.77 |
| 4th | $10,804.47 | $129,653.60 | $37.69 |
| 5th | $11,073.93 | $132,887.20* | $38.63 |

* The amount of annual base rental reflects a full 5th Sublease Year; the actual Term is for a lesser period.

13.     By amendment dated November 1, 2010 and executed by HandsOn on or about August 27, 2010, HandsOn leased additional space for a term running from November 1, 2010 through March 31, 2013.  The additional space was furnished, consisted of five offices located on the eighth floor of the building having a street address commonly known as 1156 Fifteenth Street, NW, Washington, DC and consecutively numbered 8016 through 8020.  HandsOn agreed and promised to pay "Sublease Base Rent" for the entire Premises, which is defined as follows:

4

| Rental Period | Monthly Base Rental | Annualized Base Rental | Base Rental Per Square Foot |
|---|---|---|---|
| 12/01/08 – 11/30/09 | $10,033.33 | $120,400.00 | $35.00 |
| 12/01/09 – 10/31/10 | $10,285.60 | $123,427.20 | $35.88 |
| 11/01/10 – 11/30/10 | $15,462.62 | $185,551.40 | $35.88 |
| 12/01/10 – 11/30/11 | $15,881.58 | $190,578.91 | $36.77 |
| 12/01/11 – 11/30/12 | $16,278.94 | $195,347.27 | $37.69 |
| 12/01/12 – 03/31/13 | $16,684.94 | $200,219.29 | $38.63 |

14.     HandsOn also agreed and promised to pay "Sublease Additional Rent," as provided in Section 3.C. of the Sublease and Section 3.C.(4) of the Second Amendment to the Sublease, in an amount equal to 33.61% of "Tenant's Proportionate Share" of increases in "Operating Charges" and "real Estate Taxes" (as such terms are defined in the Primary Lease).

15.     Under the terms of the Sublease, all rent was due with an administrative charge of 5% of each monthly payment.  In the event of default or delinquent payment, the Sublease provided for interest from the date the rent payment was due until the date payment is made at the rate of 15% per year.  These charges and interest apply to all outstanding rent that HandsOn has failed and refused to pay under the Sublease.

16.     Section 3.B.(i) of the Sublease further provides that HandsOn shall be liable for "all payments of Sublease Base Rent and Sublease Additional Rent (as defined below) due for the Term (collectively referred to herein as "Sublease Rent") [which] shall be due and payable without deduction, set-off or counterclaim, and without notice, demand or invoice, in advance on the first (1st) day of each calendar month."

17.     Section 3.B.(iii) of the Sublease provides:

dcdocs-87022.2

(iii) if HandsOn "fails to make any payments of Sublease Base Rent or Sublease Additional Rent within ten (10) days after the date each such payment is due, or fails to pay any other sum required under this Sublease within ten (10) days after written notice from Sublandlord that such sum is due, Subtenant shall pay Sublandlord an administrative fee equal to five percent (5%) of such past due payment.  In addition, any unpaid installment of Sublease Base Rent or Sublease Additional Rent shall accrue interest at fifteen percent (15%) *per annum* . . . ."

18.     HandsOn failed and refused to pay, and continues to fail and refuse to pay, any of the rent due for the Premises under the Sublease, as amended, for any of the months August 2011, September 2011, October 2011, November 2011, December 2011, January 2012, February 2012, March 2012, April 2012, May 2012, June 2012, July 2012, August 2012, September 2012, October 2012, November 2012, December 2012, January 2013, February 2013 or March 2013.

19.     The Sublease specifically provides for events of default which include, among other things, that HandsOn's failure to pay any monthly installment of rent constitutes default.

20.     HandsOn gave no, and has not given any, notice of its decision to stop paying rent to Lipman.

21.     By failing and refusing to pay rent due and owing under the Sublease, HandsOn breached the terms of the Sublease.

22.     HandsOn occupied the Premises up to and including May 31, 2012, at which time it abruptly vacated the Premises.

23.     While the HandsOn surrendered occupancy of the Premises, HandsOn surrendering and vacating the Premises did not absolve HandsOn from liability for

outstanding and future Rent due under the Lease.  Section 13.B.(ii) of the Sublease

states:

> . . . Upon either Sublandlord's termination of this Sublease or termination
> of Subtenant's right of possession to the Subleased Premises without
> terminating this Sublease, as provided herein, Sublandlord will in either
> such event be entitled to recovery from Subtenant of all actual direct, but
> not special or consequential, damages, to which Sublandlord may be
> entitled hereunder or at law by virtue thereof, including all costs and
> losses incurred by Sublandlord as a result of the default or Event of
> Default by Subtenant hereunder and any expenses which Sublandlord
> may incur in effecting compliance with Subtenant's obligations under this
> Sublease, all of which sums Subtenant agrees to reimburse to
> Sublandlord on demand.

24.     Not only did HandsOn fail to pay the rent it promised to pay under the

Sublease, HandsOn also retained possession of the Subleased Premises for

approximately eight months after it stopped paying rent.

25.     After HandsOn ceased paying rent to Lipman under the Sublease, Lipman

has pursued payment from HandsOn and engaged HandsOn in negotiations to resolve

the dispute over unpaid rent.

26.     The parties spent months negotiating a proposed lease termination

agreement ("Lease Termination Agreement").  The proposed Lease Termination

Agreement would have required HandsOn to pay rent due under the Sublease, as

amended, up through the end of May 31, 2012, when HandsOn vacated the Premises.

27.     The proposed Lease Termination Agreement would have required

HandsOn to pay approximately $170,524.65 of the rent it failed and refused to pay to

Lipman under the Sublease, required the payments to be made in $6,000 installments

7

with a balloon payment as the final payment and would have provided incentives for

timely payment by reducing the amount ultimately due.

28.     The proposed Lease Termination Agreement further provided:

upon timely payment of the sum of Seventy-Two Thousand Dollars
($72,000.00), the remaining balance of the Delinquent Rent shall be
abated and shall not be due and payable.   Notwithstanding the foregoing,
upon the occurrence of any breach or default of any term under this
Agreement, the foregoing abatement shall be deemed to be null and void
*ab initio*, and Subtenant shall pay to Sublandlord the full amount of
Delinquent Rent, together with interest at the Default Rate, less the sum of
any amounts previously paid to Sublandlord.

29.     The parties reduced the proposed Lease Termination Agreement to

writing, but HandsOn thereafter only made a single payment of $6,000 and failed and

refused to sign the agreement.

30.     HandsOn never indicated in any writing that it agreed to the terms of the

proposed Lease Termination Agreement and it never abided by the terms of the

agreement.

31.     Lipman made the Premises available to HandsOn for possession at all

times required by the Sublease prior to HandsOn's voluntary vacation of the Premises.

32.     After HandsOn vacated the Premises, Lipman has taken reasonable steps

to mitigate its damages.

33.     Lipman otherwise duly performed all of its duties under the Sublease at all

times during the term of the Sublease and satisfied all conditions of the Sublease.

34.     HandsOn paid a security deposit of $20,066.66 and such amount should

be reduced from the amount owed to Lipman under the Sublease.

8

## COUNT ONE
### (Declaratory Judgment)

35.     Lipman realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 34.

36.     Under the terms of the Sublease, HandsOn breached and continues to breach the Sublease because it has failed and refused, and continues to fail and refuse, to pay Lipman monthly rental installments due and owing for the months July 2011 through and including March 31, 2013, plus administrative fees and interest, and HandsOn has failed and refused to pay those amounts.

37.     By reason of the foregoing, HandsOn owes to Lipman an amount not less than $376,127.51, including administrative fees and interest calculated as of August 31, 2013, plus ongoing interest.

38.     By reason of the foregoing, an actual and justiciable controversy exists between Lipman and HandsOn regarding HandsOn's obligation to pay rent under the Sublease, as amended.

39.     Lipman is entitled to a declaration by the Court that HandsOn has breached the Sublease by failing to pay rent and that HandsOn is thereby indebted to Lipman for monthly rent installments under the Sublease, as amended, for the months of July 2011 through March 2013, together with interest and fees provided under the Sublease, as amended, plus attorneys' fees, costs, pre- and post-judgment interest, and such other and further relief as this Court deems appropriate.

dcdocs-87022.2

## COUNT TWO
### (Breach of Contract)

40.     Lipman realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 39.

41.     The Sublease required to HandsOn make the rent payments set forth above.

42.     HandsOn failed and refused to pay to Lipman the monthly rent due and owing under the Sublease for the months of July 2011 through and including March 2013, plus administrative fees and interest, and thereby breached.

43.     As a direct and proximate cause of HandsOn's breach of the Sublease Lipman suffered direct and proximate damages in an amount not less than $376,127.51, including administrative fees and interest through August 31, 2013, plus attorneys' fees, costs, pre- and post-judgment interest, and such other and further relief as this Court deems appropriate.

## COUNT THREE
### (Alternatively, Declaratory Judgment as to the Lease Termination Agreement)

44.     Lipman realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 43.

45.     Under the terms of the Lease Termination Agreement, HandsOn breached and continues to breach the not only the Sublease, but also, to extent the Lease Termination Agreement is enforceable and/or is found to supersede the Sublease, HandsOn has failed and refused, and continues to fail and refuse, to pay Lipman the

installment payments due under the Lease Termination Agreement and, thereby, breached the Lease Termination Agreement.

46.     By reason of the foregoing, HandsOn owes to Lipman under the terms of the Lease Termination Agreement an amount not less than $170,524.65, plus applicable ongoing interest.

47.     By reason of the foregoing, an actual and justiciable controversy exists between Lipman and HandsOn regarding HandsOn's obligation to pay rent under the Lease Termination Agreement, as amended.

48.     Lipman is entitled to a declaration by the Court that HandsOn has breached the Lease Termination Agreement by failing to pay rent and that HandsOn is thereby indebted to Lipman for the unpaid installment payments owed under the Lease Termination Agreement, together with interest and fees provided under that agreement, plus attorneys' fees, costs, pre- and post-judgment interest, and such other and further relief as this Court deems appropriate.

## COUNT FOUR
### (Alternatively, Breach of Contract as to the Lease Termination Agreement)

49.     Lipman realleges and incorporates by reference as if fully set forth herein the allegations of paragraphs 1 through 48.

50.     To extent the Lease Termination Agreement is enforceable and/or is found to supersede the Sublease, the Lease Termination Agreement required HandsOn to make installment payments to Lipman as set forth above.

11

51.     HandsOn failed and refused to pay to Lipman the monthly installment payments due and owing under the Lease Termination Agreement and, thereby, breached that agreement.

52.     As a direct and proximate cause of HandsOn's breach of the Lease Termination Agreement, Lipman suffered direct and proximate damages in an amount not less than $170,524.65, plus applicable, ongoing interest, plus attorneys' fees, costs, pre- and post-judgment interest, and such other and further relief as this Court deems appropriate.

WHEREFORE, plaintiff Lipman Hearne, Inc., prays for judgment as follows:

A. That the Court adjudge, declare, decree and order that HandsOn has breached the Sublease by failing to pay rent;

B. That the Court adjudge, declare, decree and order that HandsOn and is indebted to Lipman for monthly rent installments under the Sublease, as amended, for the months of July 2011 through March 2013, together with interest and fees;

C. That the Court enter judgment in favor of Lipman and against HandsOn in an amount not less than $376,127.51, representing the unpaid rent, administrative fees and interested calculate through August 31, 2013, plus additional interest accruing thereafter until the time of payment;

D. In the alternative, to the extent the Court does not find that HandsOn owes to Lipman the unpaid rent due under the Sublease for the months of July 2011 through March 2013, that the Court adjudge, declare, decree and order that HandsOn

has breached the lease termination agreement by failing to make the payments required thereunder;

E.  In the alternative, to the extent the Court does not find that HandsOn owes to Lipman the unpaid rent due under the Sublease for the months of July 2011 through March 2013, that the Court adjudge, declare, decree and order that HandsOn is indebted to Lipman for payments under the Lease Termination Agreement for all payments remaining unpaid, together with interest and fees;

F. In the alternative, to the extent that the Court does not enter judgment in favor of Lipman and against HandsOn for the rent, administrative fees and interest unpaid under the Sublease, that the Court enter judgment in favor of Lipman and against HandsOn in an amount not less than $170,524.65, representing the unpaid amount due under the Lease Termination Agreement, plus additional interest accruing on an ongoing basis;

G. That the Court adjudge, declare, decree and order that Lipman recover its costs incurred in this action, including all costs and attorney fees;

H.  That the Court award pre-judgment and post-judgment interest; and

I. That the Court grant Lipman such further relief the Court deems

just and equitable.

Dated: September 17, 2013

Respectfully submitted,


_____*s/ Daniel J. Healy*_____
Thomas R. Petty, Esq. (DC No. 376090)
Daniel J. Healy, Esq. (DC No. 476233)
ANDERSON KILL, L.L.P.
1717 Pennsylvania Avenue, NW
Suite 200
Washington, DC  20006
Tel: (202) 416-6500
Fax: (202) 416-6555
E-mail:  tpetty@andersonkill.com
         dhealy@andersonkill.com

*Attorneys for Plaintiff Lipman Hearne, Inc.*

14